# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

LINDA MILLER,         )
                          )
Plaintiff,         )
                          )
vs.                )    CAUSE NO. 1:12-CV-128
                          )
FORT WAYNE CITY      )
POLICE OFFICERS HEATHER  )
HOFFMAN and DARRELL     )
CAUDILL, *et al.*,       )
                          )
Defendants.        )

## <u>OPINION AND ORDER</u>

This matter is before the Court on the: (1) Fort Wayne Defendants' Motion for Summary Judgment, filed by Defendants, Fort Wayne City Police Officers Heather Hoffman and Darrell Caudill, on May 24, 2013 (DE #51); and (2) Motion to File Under Seal, filed by Plaintiff, Linda Miller, on August 9, 2013 (DE #65). For the reasons set forth below, the Motion to Seal (DE #65) is **GRANTED** and Exhibit 6 to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (DE #63-6) shall be maintained **UNDER SEAL** due to this narrow and specific request and based on the articulated concerns for confidentiality. The Motion for Summary Judgment (DE #51) is also **GRANTED**. The Clerk is **ORDERED** to **DISMISS** the federal claims against **Officers Hoffman and Caudill WITH PREJUDICE.** Plaintiff's state law claims against the City of Fort

Wayne and Officers Hoffman and Caudill are **DISMISSED WITHOUT PREJUDICE** to refiling in state court. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

This case arises from the mistaken arrest of Plaintiff, Linda Miller, by Defendants, Officers Heather Hoffman and Darrell Caudill, on December 7, 2010. Plaintiff was arrested pursuant to a writ of attachment issued by a judge of the Allen County Superior Court, Small Claims Division, for a "Linda Taylor." Consequently, Plaintiff spent approximately 17 hours in the Allen County Jail until the matter was resolved.

Plaintiff alleges that Officers Caudill and Hoffman subjected her to false arrest in violation of her federally protected right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983 and that the arrest violated Indiana state laws. The complaint also alleges that Defendant, City of Fort Wayne, is sued in its representative capacity as employer of Officers Caudill and Hoffman, and that it is liable under the doctrine of *respondeat superior* for the false arrest of Plaintiff. Defendants, Fort Wayne City Police Officers Heather Hoffman and Darrell Caudill, moved for summary judgment on

May 24, 2013 (DE #51)[1], arguing because the officers were acting pursuant to a valid outstanding body attachment warrant, they are entitled to quasi-judicial absolute immunity. (DE #52.) They also argue even if questions of fact exist as to whether Miller should have been arrested, Officers Hoffman and Caudill remain entitled to summary judgment under the doctrine of qualified immunity. Finally, they contend both officers are entitled to the protection of law enforcement immunity on all of Plaintiff's state law tort claims.

Plaintiff filed a response arguing her claims should be sent to trial because there are genuine issues of material fact from which a reasonable trier of fact could conclude the officers subjected Miller to false arrest and unreasonable seizure. (DE #64.) Defendants Hoffman and Caudill then filed a reply in support. (DE #69.) As such, this motion is fully briefed and ready for adjudication.

Undisputed Factual Background

On January 27, 2010, the Allen Superior Court, Small Claims Division, issued a Writ of Attachment for a person by the name of

---

[1] The motion for summary judgment and memorandum are only made on behalf of Officers Caudill and Hoffman. (DE #51; DE #52, pp. 1, 14.) Neither party presented any argument about the state law claims against Defendant City of Fort Wayne; therefore, this Court cannot rule upon the merits of those claims. *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 795 (7th Cir. 2006).

"Linda Taylor" in the case of Anthony Wayne Credit Adjusters v. Linda Taylor, Cause No. 02D01-0008-SC-17672 (DE #35, p. 3.) Plaintiff, Linda Miller's maiden name is Taylor. (Miller Dep., pp. 6, 27.) Plaintiff, Linda Renee Miller, was married several times. After her first and second divorces, she used her maiden name of Linda Taylor. (Miller Dep., pp. 6, 28, 29.) Plaintiff has had the last name of Miller since about 1999, when she married her third husband Larry Miller. (Miller Aff. ¶ 1.) She divorced Miller, but kept his last name. *Id.* Plaintiff's date of birth is November 17, 1956. (Miller Dep., p. 6.) Plaintiff's address is 337 West Paulding Road, Fort Wayne, Indiana, where she has lived for approximately 14 years. (*Id.*, p. 3; Miller Aff. ¶ 2.) In contrast, the Writ of Attachment lists "Linda Taylor's" address as 4506 SW Anthony Wayne Dr., Fort Wayne IN 46806. (DE #63-3.) Plaintiff is 5'2" tall, 200 pounds, Caucasian, with gray hair and blue eyes. (DE #63-6.) Typically, there are "warrant information cards that are attached to the actual Body Attachments" which "have identifiers of the person wanted for contempt" but although the Clerk's office tried to locate the card attached to Plaintiff's body attachment, they "were unable to locate it." (Internal Memorandum produced by Defendants in discovery, DE #63-7.)

According to Lieutenant Troy Hershberger of the Allen County Sheriff's Department, "the file of the Plaintiff, file number 380477, was merged with the file of a Linda Taylor, file number

27518, by a John W. Drinnon on October 3, 2002." (Hershberger Aff. ¶ 4, DE #36-1, and attached Ex. A, document showing the merger of the two files.)  The document showing the merger of the two files (DE #36-1 Ex. A), lists Linda Miller's address as 337 Paulding Road (Plaintiff's true address) and contains her correct date of birth, November 17, 1956, as well as her correct social security number. The document also lists Miller's employer as Deluxe Taxi.  *Id.* Plaintiff has no criminal history and the incident at issue was the only time she has been arrested.

On the day of the arrest, Plaintiff went to her job at Deluxe Taxi.  During her shift, she received threatening phone calls from two men.  Consequently, Plaintiff contacted the Fort Wayne Police Department ("FWPD").

Fort Wayne Police Officers Darrell Caudill and Heather Hoffman responded to a threat report at 6:01 p.m.  (Hoffman Aff. ¶ 3; Caudill Aff. ¶ 3.)  En route to Deluxe Taxi, Fort Wayne Police dispatch told the officers that "Linda R. Miller, date of birth November 17, 1956," had an outstanding body attachment warrant. (Hoffman Aff. ¶ 4; Caudill Aff. ¶ 4.)  Neither Officer Hoffman nor Caudill were involved in the issuance of the body attachment for Plaintiff.  (Hoffman Aff. ¶ 10; Caudill Aff. ¶ 9.)

Officers Hoffman and Caudill attested in their affidavits that they confirmed in the Spillman computer system in their police vehicle the existence of an active body attachment for a "Linda

Miller" with a date of birth of November 17, 1956. (Hoffman Aff. ¶ 5; Caudill Aff. ¶ 5.) However, a copy of the Spillman printout is attached to both of the officers' affidavits, and a close read shows that the name listed was "Linda Taylor" and the date of birth was July 9, 1957. (DE #51-3 Ex. A.)[2] Additionally, the Spillman screen provided a social security number different from Plaintiff's social security number. (DE #51-3; Pl.'s Ex. 6; Miller Aff. ¶ 10.)

After Plaintiff gave the officers information about the threatening phone calls, they told her there was an outstanding body attachment warrant and that she would be taken to the Allen County Jail. (Hoffman Aff. ¶ 7; Caudill Aff. ¶ 7.) The officers asked for her identification, and Plaintiff gave them her driver's licence which contains an accurate physical description of what she looked like. (Miller Aff. ¶ 4.) Officer Caudill also asked Plaintiff if she had used other names before, and she said her maiden name was Taylor and her two prior married names were Hildebrand and Wind. (*Id.* ¶ 5.) Officer Caudill also asked Plaintiff whether she had ever lived on South Anthony Wayne, or on South Wayne (the address in the Writ of Attachment), and Plaintiff

---

[2] Plaintiff alleges that the "Linda" for whom the body attachment was issued sometimes went by the name "Linda K. Martin" and "Linda Kay Richardson," and attaches as exhibits Spillman reports for a "Linda Martin" with listed address of 5001 Holton Ave., and "Linda Richardson" with listed address as 5001 Holton Ave., and identified as African American. (DE #63-5, pp. 2-3.) However, there is no evidence that Officers Caudill or Hoffman ever saw these Spillman screens or relied upon them.

told him no. (*Id.* ¶ 5.) When told she was under arrest,
Plaintiff's initial reaction was "are you kidding me?" and she told
them she didn't think they had the right person, she was unaware of
any collection issue pending against her or outstanding warrant.
(*Id.* ¶¶ 6-7.) Plaintiff did not see or hear the officers review
any paperwork to confirm they had the right person, or try to
verify whether the person they were supposed to arrest fit her
physical description. (*Id.* ¶ 9.)

Miller was the only employee working at Deluxe Taxi at that
time, so the officers let her contact a replacement employee and
waited for the replacement to arrive. When the replacement
employee arrived, the officers took Plaintiff into custody and
transported her to the Allen County Jail. (Hoffman Aff. ¶ 7;
Caudill Aff. ¶ 7.) She was never handcuffed. (Hoffman Aff. ¶ 8;
Caudill Aff. ¶ 8; Miller Dep., p. 15.) Nevertheless, Plaintiff
attested in her affidavit that "[b]eing arrested was still very
upsetting." (Miller Aff. ¶ 8.)


DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil
Procedure, summary judgment is proper only if it is demonstrated
that there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law. *See*
*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant must support its assertion that a fact is genuinely disputed by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect* the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"A party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Country REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.,* 955 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### Quasi-Judicial Absolute Immunity

Because it is a complete defense to liability, "[a]bsolute immunity from civil liability for damages is of a rare and exceptional character," *Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988) (quotation omitted), and there is a presumption against granting it to government officials. *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992). The burden of establishing absolute immunity rests on its proponent, who must show that overriding considerations of public policy require that the defendant be exempt from personal liability for unlawful conduct.

*Auriemma*, 860 F.2d at 275; *Walrath v. United States*, 35 F.3d 277, 281 (7th Cir. 1994).

"Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) (citing *Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980)). Although immunity is typically extended to those performing discretionary and not ministerial acts, "those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings have quasi-judicial immunity." *Id.* For example, in *Henry*, the Court found that a Sheriff who enforced a money foreclosure judgment entered by a court was entitled to quasi-judicial absolute immunity from suit for damages arising from the acts. There, the Seventh Circuit held that "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages." *Henry*, 808 F.2d at 1239.

However, as the Court aptly stated in *Roy v. The Town of Newburgh*, No. 3:03-CV-00099 RLY WG, 2005 WL 941681 (S.D. Ind. Feb. 28, 2005):

> The key to determining if a police officer is
> entitled to quasi-judicial immunity is to examine
> the nature of the plaintiff's complaint in relation
> to the officer's conduct. If a suit was brought
> against the officers simply for carrying out the
> orders of a judge in an arrest warrant, then their

> actions fall under the protection of quasi-judicial immunity. *Richman v. Sheahan*, 270 F.3d 430, 436-38 (7th Cir. 2001). "By contrast, when the conduct directly challenged is not the judge's decision making, but the manner in which the decision is enforced, ... the law enforcement officer's fidelity to the specific orders of the judge marks the boundary for labeling the act 'quasi-judicial.'" *Id.* at 436. Thus, if the wrong complained of is not the judge's order, but is, instead, the manner in which that order is carried out, then quasi-judicial immunity is no protection for the officers. *Id.* This is true because the manner in which an officer enforces a judicial order implicates an executive function, not a judicial one. *Id.* at 438.

*Roy*, 2005 WL 941681, at *7.

In this case, Plaintiff does not challenge the issuance of the Writ of Attachment to "Linda Taylor." Her complaint is with Officers Hoffman and Caudill for the manner in which they executed the warrant. Plaintiff states so much in her memorandum: "[t]he lawfulness of the manner in which the Defendants' executed the order of body attachment is at issue in this case, not of the lawfulness of the order itself..." (DE #64, p. 8.) The Writ of Attachment states that the person in contempt is "Linda Taylor" and her address is 4506 SW Anthony Wayne Dr., Fort Wayne. Here, Plaintiff's name is Linda Miller, and her address is 337 West Paulding Road, Fort Wayne. Thus, the Court concludes that because the conduct complained of is the manner in which the Officers executed the Writ of Attachment (on, admittedly, the wrong person), quasi-judicial immunity is not applicable.

11

<u>Qualified Immunity</u>

Even when they are not protected by absolute immunity, law enforcement officers typically receive qualified immunity for conduct performed within the scope of their official duties. *See Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The contours of a clearly established right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Sivard v. Pulaski Cnty.*, 17 F.3d 185, 189 (7th Cir. 1994) (quotation omitted). This standard provides ample protection "to all but the plainly incompetent or those who knowingly violate the law." *Millspaugh v. Cnty. Dep't of Public Welfare of Wabash Cnty.*, 937 F.2d at 1176 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). Whether a government official is entitled to qualified immunity is a legal question for resolution by the court, not a jury. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

In resolving whether qualified immunity applies, the Court must ask two questions. The first inquiry is whether the facts alleged show the officer's conduct violated a constitutional right; and the second inquiry is whether the right at issue was clearly established at the time of the officer's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has held that the Court need not resolve the two inquiries in a sequential fashion, and may address the second inquiry before the first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

The Seventh Circuit has held that "[t]he arrest of a person named in a valid warrant, . . . even if it turns out to be the wrong individual, will not violate the Fourth Amendment unless the arresting officer acted unreasonably." *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) (finding it not unreasonable for police to arrest plaintiff pursuant to a body attachment order that contained the same name, race, county of residence, birth date, and approximate weight of plaintiff). In this case, no one disputes that there was a real Writ of Attachment for a "Linda Taylor" living at 4506 SW Anthony Wayne Dr., Fort Wayne, IN. (DE #63-3.)

Moreover, Defendants have not contested the explanation of
Hershberger of the Allen County Sheriff's Department, who explained
that Plaintiff's name came up as having an outstanding body
attachment on December 7, 2010, due to an improper merger of
Plaintiff's file with the file of "Linda Taylor." (DE #36-1.)
Indeed, the document showing the merger of the two women's files is
in the record, and again, is not controverted. (DE #36-1 Ex. A.)
*See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("when a
responding party's statement fails to controvert the facts as set
forth in the moving party's statement in the manner dictated by the
rule, those facts shall be deemed admitted for purposes of the
motion"); Fed. R. Civ. P. 56(e)(2). The two officers attested that
they were not involved in issuing the Attachment Warrant, and their
only involvement was to arrest Miller after being advised of the
outstanding body attachment by dispatch and verifying the existence
of the active body attachment in the Spillman system. (Hoffman
Aff., pp. 2-3; Caudill Aff., pp. 2-3.)[3]

_____

[3]Plaintiff argues the Officers' claim that they were
verbally told a warrant was pending against "Linda Miler" creates
a material issue of fact, because a jury could disbelieve the
Defendants' story that the dispatcher said the last name "Miller"
instead of "Taylor." (DE #64, p. 10 ft. 3.) First, both
Officers signed affidavits under oath that dispatch told them
there was a pending warrant against "Linda R. Miller, date of
birth November 17, 1956." (Hoffman Aff. 4; Caudill Aff. 4.)
Defendants have not cited to any materials in the record
(depositions, affidavits, etc.), to show this is a disputed fact.
At this stage of summary judgment, once the moving party puts
forth evidence showing the absence of a genuine dispute of
material fact, the burden shifts to the non-moving party to

Plaintiff argues that based upon the details in the Spillman computer screen in the squad car, the officers could not have reasonably believed Plaintiff was the person they sought to arrest. The Spillman screen plainly indicates the arrestee was "Linda Taylor" date of birth 7/9/1957, who lived at 337 Paulding Rd. in Fort Wayne. (DE #51-3 Ex. A.) In contrast, Plaintiff was "Linda Miller" (but her maiden name was Taylor, and she admitted to the officers to using Taylor at times when she was not married), and her date of birth was less than one year different at November 17, 1956; however, her address was indeed 337 Paulding in Fort Wayne. Does the different last name (but her maiden name), different date of birth (but less than a year difference), and different social security number on the Spillman screen make the officers' belief unreasonable? This Court thinks not. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971). In *Hill*, the police arrested a man who had a completely different name (Miller) than the real suspect (Hill) and produced identification. *Id.* at 799. The Court noted that "aliases and false identifications are not uncommon" and held there was no Fourth

___

provide evidence of specific facts creating a genuine dispute. *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995); Fed. R. Civ. P. 56(c)(1). Mere "metaphysical doubt as to the material facts" is not enough. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Amendment violation because "the officers in good faith believed Miller was Hill." *Id.* at 803-04.

The Seventh Circuit is replete with cases that have recognized discrepancies between a warrant and the arrestee's physical appearance, address, and birth date are often insufficient to create a genuine factual dispute about whether arresting officers had probable cause. *See, e.g., Johnson v. Miller*, 680 F.2d 39, 40-41 (7th Cir. 1982) (no Fourth Amendment claim where white plaintiff was arrested pursuant to a warrant bearing her name and address but describing suspect as African American); *Patton v. Przybylski*, 822 F.2d 697, 698-700 (7th Cir. 1987) (no claim where police arrested plaintiff with a warrant bearing his name but had a different address and birth date); *Brown v. Patterson*, 823 F.2d 167, 168-69 (7th Cir. 1987) (no claim where plaintiff's name was same as alias associated with warrant that matched his race and gender, even though birth date and address were different). As the Court stated in *White*, "the peril of liability under section 1983 should not be placed upon arresting officers every time they are faced with the practical dilemma of arresting or releasing an individual who, despite some discrepancies in description, they reasonab*ly believe to be the intended subject of an arrest warrant.*" *White*, 56 F.3d at 820. Here, there is uncontroverted evidence that the Officers were verbally told by dispatch that there was an outstanding body attachment for "Linda Miller" (Plaintiff's name) and given her

accurate date of birth. The Spillman screen in the squad car verified a body attachment for a person with the same first name as Plaintiff, Plaintiff's maiden last name, her true and correct address, and a birth date less than one year away from Plaintiff's true birth date. There is no evidence in the record that the Officers intentionally or wrongfully set out to deprive Plaintiff of her liberty, and the mere discrepancies in the Spillman screen upon which they relied do not create a genuine issue of material fact that the Officers are liable for wrongful conduct under Section 1983.

As Defendants point out, several cases upon which Plaintiff relies in arguing qualified immunity is not available are warrantless arrests or warrantless search cases. *See, e.g.*, *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007) (warrantless arrest); *United States v. Ellis*, 499 F.3d 686 (7th Cir. 2007) (warrantless search of residence); *United States v. Mancillas*, 183 F.3d 682 (7th Cir. 1999) (investigatory warrantless vehicle stop). These cases are inapposite. Here, the arrest was made pursuant to a warrant (which gave the officers a basis for arresting Plaintiff), with the standard that the arresting officer must reasonably believe the person arrested is the person sought. *Olig*, 56 F.3d at 820; *United States v. Marshall*, 79 F.3d 68, 69 (7th Cir. 1996). In *Catlin v. City of Wheaton*, 574 F.3d 361 (7th Cir. 2009), a case cited by Plaintiff, but where the Court affirmed summary

judgment in favor of the defendants and affirmed the finding of qualified immunity where officers mistakenly arrested the wrong suspect, the Court emphasized that:

> [T]he defendants are required to show only the *reasonableness* of their belief that the person they arrested was the person they were seeking; they are not required to show that they knew *with certainty* that the person they arrested was the person they were seeking. Often, there will have been more than an officer could have done to confirm a suspect's identity. This will not render an arrest unconstitutional so long as the officer's actions were reasonable under the circumstances.

*Catlin*, 574 F.3d at 366 (italics in original). As stated earlier, the Officers in this case acted reasonably when they relied upon the verbal notification from dispatch and the Spillman screen which provided that the suspect was "Linda Taylor" (and Taylor is Plaintiff's maiden name), and Plaintiff's accurate address.

Plaintiff also relies upon *Phelan v. Village of Lyons*, 531 F.3d 484 (7th Cir. 2008), which is also distinguishable. In *Phelan*, police officers stopped and arrested the plaintiff after they typed into the LEADS system the license number of the car she was driving and got a report of a stolen vehicle. However, they overlooked the third line of the LEADS report containing the description for the stolen vehicle as being a black 2002 Honda motorcycle (not the white automobile plaintiff was driving). The Seventh Circuit found no qualified immunity because the officers could not ignore information in front of them that undermined probable case. *Id.* at 488-90. In this case, there was no

information the officers received that definitely established Plaintiff was not the intended arrestee - rather, they relied upon a facially valid bench warrant, dispatch's statement about the warrant for "Linda Miller," and the information on the Spillman screen (including Plaintiff's correct maiden name and address). This information provided the officers with a reasonable basis to believe Plaintiff was the intended arrestee, despite some discrepancies.

To the extent Plaintiff urges that the Officers should have investigated further due to Plaintiff's protestations of innocence (DE #64, p. 10-11), this argument also fails. Plaintiff argues that, after her protestation, the Officers should have obtained additional information. It is unclear exactly what other information the officers should have obtained or read, but presumably, Plaintiff is arguing they should have tried to find out the information contained in the information card that is usually attached to the actual Body Attachments which typically has personal identifiers. However, all parties concede in this case that the card that was supposedly attached to Plaintiff's body attachment was never located or produced, so it is pure conjecture to speculate what information the card might have contained, or if it was ever actually attached to the Body Attachment. (Internal Memorandum produced by Defendants in discovery, DE #63-7.)

Regardless of the exact extra information Plaintiffs believe the Officers should have sought out or attempt to receive and read,

> The Constitution does not require an arresting officer to conduct an incredibly detailed investigation at the probable cause stage. . . . Once an officer has trustworthy information that leads him to reasonably believe that probable cause exists, he is entitled to rely on that information and is under no further duty to investigate.

*Olig v. City of Hobart Police Dep't*, No. 2:08 cv 301, 2010 WL 3894108, at *6 (N.D. Ind. Sept. 30, 2010) (quotations and citations omitted).  As the Seventh Circuit set forth in *Johnson*:

> If an officer executing an arrest warrant must do so at peril of damage liability under section 1983 if there is any discrepancy between the description in the warrant and the appearance of the person to be arrested, many a criminal will slip away while the officer anxiously compares the description in the warrant with the appearance of the person named in it and radios back any discrepancies to his headquarters for instructions.

*Johnson*, 680 F.2d at 41.

While this Court certainly sympathizes with the plight of Plaintiff, whom everyone agrees was wrongfully arrested, based upon the information in front of Officers Caudill and Hoffman at the time of Plaintiff's arrest, including the undisputed evidence that dispatch verbally told them there was a body attachment for "Linda R. Miller," birth date November 17, 1956, and the Spillman screen showed the name "Linda Taylor" (Plaintiff's maiden name) and indicated her true address, and a birth date less than one year off, the Court believes the Officers were reasonable in their

belief that Plaintiff was the suspect indicated in the Body Attachment. As such, qualified immunity applies.

State Law Claims

The Court has granted summary judgment in favor of Officers Hoffman and Caudill on Plaintiff's federal claims, which were the sole basis for federal jurisdiction in this action under 28 U.S.C. § 1331. The parties are not diverse. Because Plaintiff's claims under § 1983 against Officers Hoffman and Caudill were the only federal claims in this case, the Court must decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the Officers and against the City of Fort Wayne in its representative capacity.[4] Upon due consideration, the state law claims against Officers Hoffman and Caudill and the City of Fort Wayne are **DISMISSED WITHOUT PREJUDICE** because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); *see also Williams v. Fort Wayne Police Dep't Officers John/Jane Does*, No.

---

[4] The complaint specifies that Defendant, City of Fort Wayne, is being sued in its representative capacity as employer of Officers Hoffman and Caudill under the doctrine of *respondeat superior* for the alleged false arrest of Plaintiff. (DE #1, ¶ 2.)

1:12-CV-202, 2012 WL 6727534, at *3 (N.D. Ind. Dec. 27, 2012) (dismissing without prejudice to refiling in state court state claims against the City of Fort Wayne in its representative capacity after ruling that section 1983 claims against individual officers should be dismissed).


CONCLUSION

For the reasons set forth below, the Motion to Seal (DE #65) is **GRANTED** and Exhibit 6 to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (DE #63-6) shall be maintained **UNDER SEAL** due to this narrow and specific request and based on the articulated concerns for confidentiality. The Motion for Summary Judgment (DE #51) is also **GRANTED**. The Clerk is **ORDERED** to **DISMISS** the federal claims against **Officers Hoffman and Caudill WITH PREJUDICE.** Plaintiff's state law claims against the City of Fort Wayne and Officers Hoffman and Caudill are **DISMISSED WITHOUT PREJUDICE** to refiling in state court. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.


**DATED: December 18, 2013**         **/s/ RUDY LOZANO, Judge**
                                     **United States District Court**